Your Honor, good morning. For appellants, I'm Andrew Frisch. I want to spend my time this morning showing that the motion for recusal was timely, that the issue is more than substantial. It's indefensible, and that the safe harbor does not apply. It's not the answer to this. And even if it was applicable, it still wouldn't matter, given the extent of Judge Committee's connections to the entities that are at issue in this case. So why was the motion to recuse timely? It's timely because Judge Committee assured the parties at the very first court appearance in 2023 that there was no overlap between the case and his interests. It's timely because when he made that representation... I mean, is it fair? I mean, I just am mindful of your time. Is it fair to summarize your argument as you moved at the earliest possible moment or...  Because of the disclosure form? Absolutely. That's a big part of it. The 2023 financial disclosure form was not available until after trial in October 2024. So would you agree that you had access to all of the other facts that you now claim give rise to the appearance of the partiality long before you received that form? I think that's not fair. I think that's not fair when you say we had access. So these financial disclosure forms, as your honors know better than I do, has a list of places where you list your various investments. And the 2023, as it turns out, has something like 34 lines of investment vehicles and related disclosures. And as Judge Committee himself... But what was different about the 2023 form that was different than other forms that might have gotten filed or other information you might have known? There was overlap. I think it was more extensive. There were more lines, but it was overlap. But here's the key. The key is that even Judge Committee acknowledged in denying recusal that it took appellants a Herculean effort to drill down. In other words, what the disclosure forms show is that Judge Committee has investments here, there. It just identifies the investment vehicles. It doesn't identify the constituent positions. Right. So I think what you're saying is that you read Chase Manhattan to say the defendant doesn't have a duty to scour the financial records for conflicts. But at the same time, we also have cases that say you can't just wait until after verdict or even after judgment and move. How do we reconcile those two? Well, in this case, the way to reconcile it is very fact-specific. You have a judge who's very immersed in this world, in the world of finance, who's a day trader. He's a million-dollar day trader. He has interest in hedge funds, and he's telling us, having seen the ex parte 12.4 disclosure, there's no overlap. And at the same time, the 2023 disclosure form isn't going to be available until after trial. And I want to address head-on. So the way to reconcile it is on these facts, the defendants and the defendants in any case. It cannot be their burden to look beyond and challenge a judge's representation and do an investigation that's Herculean to go to the SEC filings to go back. So if you're making an efficiency argument, then help me out with the fact that it would be also a waste of resources if we have to regularly start cases over from scratch because of disqualifications that came late in the game. So the efficiency thing, while I'm sure is something we consider, it can't be all of it. How do we reconcile that? So there's a couple of answers to that. First of all, it's the judge's burden. It's any judge's burden. It can't be on the defendants to have to figure out what he's sitting there at the time and he or she is sitting there at the time and that he knows. But I think there's a bigger point here to make and an answer to that question. And I think this is the most important thing that I have to say today, which is this. Judge Committee and I were colleagues in the U.S. Attorney's Office 20, 25 years ago. If a merits panel reverses here, he will recover. But great judicial wealth may not be the exception going forward. And absent bright lines to judges, both newly appointed judges and existing judges, public confidence in what we do here may not recover. Here's the government's position on timeliness and to some extent on the merits. A judge assures the party there's no overlap. The most recently publicly available disclosure is two years old. The judge has 20, 30, 40 vehicles and related disclosures, the constituent positions of which can only be determined with, as Judge Committee described it, a Herculean effort. And it's on the defendants to figure it out? That can't be. We can't have a situation where as a result of this case, we have what we might call Watson hearings, where the judge says, I'm immersed in this, I'm a day trader, I have interest in hedge funds. But by the way, don't worry about it. You can be assured there's no overlap. And it's on the defendants to challenge the credibility of a judge's assurance and have it on their plate to sort of do the investigation that was done here. We found this stuff by serendipity and by, frankly, our enterprise. And if you go back to the language of Lidovich, had we not done that, this conflict, what we allege is a very serious and grave conflict, would have gone unnoticed and unremitied. It can't be that we're in a worse position because we did this work when the judge who knows all of this stuff is telling us, don't worry about it, there's no overlap. Can I ask a different question? I'm looking at the test. Is a victim of a crime a party to a proceeding? No. So we're looking at the test of is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding. So even if we assume that 455 Safe Harbor doesn't apply and that these interests would have been disqualifying, the hedge fund interest would have been disqualifying if those entities had been parties to the proceeding. As I understand it, none of them actually suffered any losses such that their interests could be substantially affected by the outcome. What's the response to that? There's two responses. And let me give you, this may be in reverse logical order, so bear with me. I'll get to Your Honor's point. This is more than just financial interests. This is more than how much money through the hedge funds he has, the positions he has. And this is about the other things as well. Judge Committee, and I know him, I respect him, I'm not unduly disparaging him, but he has longstanding and substantial relationships, deep relationships with J.P. Morgan and Goldman. They served Viking when he was general counsel as prime broker. You've briefed those, so let's assume your point that there are personal, and obviously these entities are widely ranging entities. He has relationships with people in leadership roles in these various entities. Is that a fair? It's fair. I would say that his relationship to these entities, his relationship to Google, the investment of which put him and Viking on the map professionally, I think this is highly unusual. There's never been a case, as far as I know, where a judge has connections of this extent, and he's allowed to, or he or she is allowed to preside over the trial. But I want to get back to, and maybe this is the second point that should have been logically first, and I'm supposed to bear with you, but because these aren't parties, we're in a slightly different world, right? There's no automatic disqualification based on the types of connections that you're describing, whether they be direct financial or even personal. So where's the substantial impact on the judge's interests? First of all, you look at the financial interest with regard to victims. You look at it prospectively under the statute. The word is could, right? It's if there's a chance that any interest, financial, professional, reputational, could be substantially affected, you can't sit on this case. And so it's not fair to go back at the end of the case and say no harm, no foul. As it turns out, none of these people got restitution, so what's the problem? But were any of them even alleged to have suffered losses? I mean, that's not a no harm, no foul. That's a perspective thing. If, hey, these people were victims because they, let's say they were subject to misrepresentations, but they didn't actually cough up any money. I think that's right, but this is not just about the financial. It's about what the disinterested observer under Section A of 455 would think of all this, whether a disinterested observer would see Judge Committee as impartial given all, and this is an important point to make as both regards timeliness and with regard to the substance. During trial, during trial, the appellants, the clients, are ferociously complaining about Judge Committee's apparent bias. There's a package of 24 letters that they submitted during trial to Chief Judge Brody, ultimately found their way to the desk of this court's chief judge, and it includes a 10-page letter from Professor Sullivan detailing the apparent bias. A disinterested observer would be aware of that. A disinterested observer, Section 455's disinterested observer, would be aware and might conclude as an amico that the judge is more concerned about protecting his reputation than vindicating 455. How so? Because after the case was completely over just a month ago, just a month ago, he reached out and sua sponte addressed one of the appellant's arguments made in this court. That's kind of like amico where the judge sua sponte said something in response to a mandamus. And why did Judge Committee delay disclosure of the ex parte 12.4 statement until just the past four weeks? When I came in the case in October, I'll make this one last point if I could. I know you have a big calendar. Why did he wait until he had no jurisdiction to entertain a renewed motion for recusal? Because the 12.4 disclosure that he had on day one lists, as important to this case, J.P. Morgan Chase Goldman. The most important thing I will say in this case is the public perception, the disinterested observer, public confidence in what we do here. And this range of connections that Judge Committee has with this case is too much. All right. Thank you. We've heard your answer and appreciate it. And we'll hear from Attorney Segal. May it please the Court, Jonathan Segal for the United States. I represented the government in all the proceedings below. If it's all right, I'd like to start with the question that Judge Robinson asked. Even putting aside timeliness and even putting aside the safe harbor, the case law is clear that even direct stock ownership in a victim is not a per se basis for recusal. And the way that the Second Circuit has consistently evaluated that is by looking at what percentage does the court have in terms of the market capitalization of the company. And at even percentages higher than the percentages here, the Second Circuit has held they are not only insubstantial, but nonexistent. Well, but isn't the recusal standard not just a direct interest, but the appearance of interest? And I understood your calling on the other side to say that that's something that we need to be concerned about. Yes, Your Honor, but that was the same standard that was in play in all of those other cases as well. The idea that a disinterested observer would think that a judge who has a minuscule percentage ownership in a gigantic corporation like Alphabet, which is a $1.7 trillion company, that the fact that they are an intended victim with no alleged loss that never sought restitution, that that would affect the judge's impartiality in this criminal case. There is no basis for that, and similar arguments have been consistently rejected by this court. What about the connection with the Goldman former liaison with the federal law enforcement? So there's an allegation. Part of the allegation is that there's too much of a connection that it would make the public nervous about the impartiality. Yeah, so that's a factual issue and a legal issue. In terms of the factual issue, the allegation is that Judge Committee has a personal relationship with someone who used to be the law enforcement liaison at Goldman. As the government laid out in its papers, at least to the government's knowledge, that person has had nothing to do with this case. And there's never been any evidence that he had anything to do with the case other than his former lawyer. I'm sorry, so I know that my question is not with respect to whether or not it was argued in point of fact. Do you know that this individual was employed by Goldman and whether it overlapped with any of the relevant timing? I don't know. In terms of what I can speak to as my involvement in the case and having spoken to lawyers at Goldman and people at Goldman, I never came across that person. I can't speak to what happens behind the doors at Goldman, but there has never been any indication that we've been aware of or that is in any way in the record that that person had any involvement in the case. But, Your Honor, even beyond that- Let me be sure I follow your argument. So the judge in question owns, you know, 100 shares of Amazon and is sitting on a case involving Amazon. It's your position that the judge can sit in his or her chambers and think about whether this Amazon ownership will tame my impartiality? My argument is- And the judge is supposed to go down that road? No, Your Honor. In a case where Amazon is a victim, and it would be different if Amazon were a party, but in a case like that, it's that that kind of small ownership percentage is not substantial and does not meet the threshold for anything. And that's even assuming direct ownership. And you still have to get past the fact that this was not direct ownership. These were owns. These were part of an investment in very large hedge funds. So you're not contending that in a civil case in which Amazon was a party, there would be some materiality threshold if there was a financial interest at all? Absolutely not. I think the law is clear. If it's a direct interest in a party, that's a basis for recusal. I think that's in 455 itself. If it's held through a common investment fund, as was the case here, that's a carve out. And if it's in a victim, it's subject to a different rule. But I would just like to- I'm struck by that. I haven't seen that notion applied to a hedge fund, something that's not publicly traded. It's not necessarily widely diversified. Is there any case in which the 455D4I safe harbor has applied to a hedge fund? No, Your Honor. There's actually quite a bit of paucity on that safe harbor, at least on Westlaw. The only case in the Second Circuit that's ever addressed it is the Tieman case, which was a summary order. And that addressed Berkshire Hathaway, which is not a mutual fund but is a company that owns other companies. That's why Judge Committee, as opposed to relying on any law, looked to the guidance from the Judicial Conference and did walk through each of those factors and, in his very detailed opinion, explained why each of those does treat a hedge fund as a common investment vehicle. One thing I would like to point out, just to respond to the point about potential personal relationships with people who are at Goldman, on page 86 of the government's appendix, we cite the Lavaglia decision, L-O-V-A-G-L-I-A. And that's a case where the judge had formally represented the victims, the victim company, had socialized with the company's owners, and had been involved in a restaurant business with one of the company's owners, all prior to becoming a judge. And even that was found to not require recusal. That's far and away different from what we have here. And, again, that's even putting aside timeliness, because the relationship that they talk about with Goldman Sachs all stemming from Viking, that was known at the very beginning of the case. That was covered when Judge Committee explicitly said, if there was any overlap here with Viking, you know, let me know. So they can't beat the timeliness. They have no basis to argue that this is not a common investment fund, and even without any of that. So your view is that the defense has an obligation upon learning that he has an interest in Viking to go look at Viking's quarterly reports to figure out where they're invested and what securities? In terms of the timeliness inquiry, yes, Your Honor, those are all public filings. They're on the SEC website. If the timeliness requirement is to mean anything, it has to mean that where there's information that's in the public knowledge, that there is a notice requirement. And that's been cited in cases where the Second Circuit has said it was public knowledge that this judge previously worked at this law firm. So at what point, because the list of interested parties was sealed, at what point did defendants have noticed that these four entities were identified victims of the alleged crime? Well, for three of them, they were listed in the indictment, and they were provided with a list of de-anonymized entities. J.P. Morgan, and look, that's putting aside the fact that the defendants were personally involved in all of this. They received documents from J.P. Morgan in discovery, and as part of voir dire, J.P. Morgan was identified as a name that would come up at the trial. So all of that was before trial. So the unsealing of that document wasn't a, from your perspective, significant event in the timeline in terms of providing defendants information they didn't already have relative to these alleged conflicts? Your Honor, respectfully, I think that that document is a red herring. The information that's in it was all disclosed pre-trial, and that's, again, putting aside the fact that the defendants were personally involved in all of this. Let me be sure I understand. Tell me precisely what you think Judge Committee's responsibilities were in this regard. I think that Judge Committee has a responsibility to look at his investments, look at his interests, and to- But he has a responsibility to know that. That's right. Okay. He hasn't, that's all true. In this case, Judge Committee quite properly made the determination that he did not have to recuse. All of his holdings were through a common investment fund, and even if they were direct, they wouldn't have required recusal. But in terms of the timeliness standard, in terms of a party's obligations, they are required to make the motion at the earliest possible moment. And I just want to respond to something that my colleague said. They said that they learned about this through serendipity. They filed an affidavit indicating they had hired a private investigator who was pulling Judge Committee's financial disclosures months before trial. That would have included the 2020 and 21 filings that were publicly available at that time that included his investments in the hedge funds that are at issue here. This information was available before trial about the hedge funds. It is information the defendants were looking for. And by their own affidavit in the months before trial, they had been pulling them. And so putting aside the assertion that on these facts they had the information, is it your position that that is within the scope of the effort that defense is sort of obligated to undertake to hire an investigator to look through a judge's financial disclosures? Or can they rely on a judge's assertion that they don't have conflicts? Well, I don't think it's necessary to hire an investigator to pull things that are accessible on the SEC's website or accessible on the public disclosures. So the lawyers should have done that search themselves, notwithstanding the statement in court that I don't see overlap? Well, what the judge indicated is that he indicated I don't see an overlap. He mentioned if there was viking, that would be another issue. One of the funds they're talking about here is viking. So to the extent that viking has its holdings publicly available every quarter on the SEC's website, to the extent they want to make an argument that those holdings create an issue, their obligation is to do that. Now, for all the reasons we've talked about, those holdings don't create an issue. But if the timeliness requirement is to mean anything, then it is required that where there is public government filings about it, the defendants have to act on it. All right. Thank you both. Appreciate your arguments. We'll take it under advisement.